UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

MARGARET A. BURDICK,

                Plaintiff,

        v.

BATH CENTRAL SCHOOL DISTRICT,
BATH CENTRAL SCHOOL DISTRICT
BOARD OF EDUCATION, and JOSEPH
RUMSEY, *in his official and individual capacity*,

                Defendants.
_____

**DECISION AND ORDER**

6:19-CV-06426 EAW

## **INTRODUCTION**

    Plaintiff Margaret A. Burdick ("Plaintiff") filed this action, alleging claims pursuant to 42 U.S.C. § 1983 and New York state law against defendants Bath Central School District (the "District"), Bath Central School District Board of Education (the "Board"), and Superintendent Joseph Rumsey ("Rumsey") (collectively, "Defendants") based upon the termination of her employment as a tenured Business Administrator. (Dkt. 1-1).

    Presently before the Court is Defendants' motion to dismiss certain of Plaintiff's causes of action.[1] (Dkt. 7). For the reasons discussed below, Defendants' motion is granted in part and denied in part. In addition, the Court directs both parties to file memoranda

---

[1] Defendants cite Federal Rule of Civil Procedure 12(b)(1) in their notice of motion as the basis for their requested relief (Dkt. 7 at 1), but throughout both sides' papers they refer to Rule 12(b)(6). Accordingly, the Court will treat the motion as having been filed pursuant to Rules 12(b)(1) and 12(b)(6).

within thirty (30) days of the entry of this Decision and Order setting forth their respective positions as to whether Plaintiff's claims pursuant to Article 78 of New York's Civil Practice Law and Rules ("Article 78") should be dismissed without prejudice and remanded to state court, with Plaintiff's remaining claims stayed pending a resolution of the Article 78 proceeding.

## BACKGROUND

### I. Factual Background

The following facts are taken from Plaintiff's Verified Petition-Complaint ("Complaint") filed in New York state court. (Dkt. 1-1). As required at this stage of the proceedings, the Court treats Plaintiff's allegations as true.

Plaintiff served as a tenured Business Administrator for the District from July 16, 2010, until January 30, 2019. (*Id.* at ¶¶ 1, 5). In this role, Plaintiff "report[ed] directly to the Superintendent [Rumsey]" and "ha[d] a broad range of responsibilities with respect to the operations of the District," which "include[d], among other things, contract negotiations and administration, purchasing, benefits administration, budget development and management, human resources, Medicaid cost reporting, State Aid worksheet filings, and supervision of account clerks." (*Id.* at ¶¶ 12, 13).

Although Plaintiff "initially enjoyed a positive working relationship with Rumsey . . . [o]ver time . . . the relationship became more tense as he failed to offer proper administrative support" and because Plaintiff "raised concerns about a number of issues and practices at the District." (*Id.* at ¶ 17). Plaintiff complained to Rumsey regarding the need to "hire [incoming personnel] promptly or to arrange for cross-training" and that "the

District's administrators could not keep up with their duties." (*Id.* at ¶¶ 19-20). Due to the "[t]he lack of timely support and Rumsey's failure to insure that the incoming officials had timely training," the District "faile[d] to make timely filings with the New York State Department of Education." (*Id.* at ¶ 21).

At a June 2017 meeting with the then-Board president and Rumsey, Plaintiff expressed her concern regarding the unlawful hiring of an uncertified teacher. (*Id.* at ¶¶ 28, 29). In response, "[a]mong other things, [Rumsey] ripped an organizational chart off of the wall and pointed out that [Plaintiff] was subordinate to him" and "also stated in substance that he was free to decide whom to hire." (*Id.* at ¶ 30). Rumsey "asserted that the District had been given special permission from the Education Department to hire uncertified teachers," but Plaintiff "was unable to locate any such permission." (*Id.* at ¶ 31). Rumsey "further admonished [Plaintiff] that she was not to raise the issue of hiring uncertified teachers with anyone in the future," which "effectively barred her from raising any future concerns about such hiring with the Board." (*Id.* at ¶ 32). Plaintiff subsequently learned of several other instances in which "the District [had] paid full salary and benefits to the uncertified teachers . . . all in violation of State law." (*Id.* at ¶¶ 33-34).

Plaintiff also "learned of circumstances that she believed involved prohibited conflicts of interests involving District funds and property" and "employees' use of their work time and District property to further their personal outside business interests." (*Id.* at ¶ 39). Plaintiff raised these concerns at the June 2017 meeting and on multiple other occasions. (*Id.* at ¶¶ 40-43). "In an attempt to diminish [Plaintiff's] willingness to raise concerns," Rumsey publicly humiliated her at meetings. (*Id.* at ¶ 44).

On January 25, 2019, without any warning, Rumsey informed Plaintiff that her position "was being eliminated and that the responsibilities would be transferred to [the Greater Southern Tier Board of Cooperative Educational Services ("BOCES")]." (*Id.* at ¶¶ 46-47). Rumsey "attributed the elimination of the position to putative cost savings." (*Id.* at ¶ 48). "[E]ven though an analysis of potential cost savings would have been within the scope of her job responsibilities," Plaintiff was never asked to prepare such an analysis. (*Id.* at ¶ 49). "Effective immediately, [Plaintiff] was required to vacate her office, surrender all District property and leave the District premises." (*Id.* at ¶ 51).

On January 30, 2019, the Board "ratified" Rumsey's actions at a special meeting. (*Id.* at ¶ 52). "Upon the recommendation of the Superintendent," the Board adopted the following resolution:

> a. For reasons of economy and efficiency effective June 30, 2019, the position in the title of Business Administrator is abolished and the work function transferred to BOCES pursuant to Education Law 1950.
> b. The person having the least seniority in that tenure area is Margaret Burdick.
> c. Margaret Burdick shall be placed on the preferred eligible list of the District in accordance with law.

(*Id.*). The Board also placed Plaintiff on a paid leave of absence from January 28, 2019, through June 30, 2019. (*Id.*). "[T]he Board prepared no analysis, formal or informal, calculating the putative cost savings, considering the impact of the elimination of the position on the District's administrative efficiency, alternative areas of savings, or any other issues that the elimination of the position implicated." (*Id.* at ¶ 53).

"The District . . . divided [Plaintiff's] former position into two parts." (*Id.* at ¶ 55). "Specifically, the District has allocated $120,000 to contract with BOCES for an official

to provide the bulk of the business administration services for the District, and it has also contracted with another person . . . to provide some other portions of those services." (*Id.*) Defendants have not afforded Plaintiff "the opportunity to perform her duties pursuant to the District's agreement with BOCES, even though she is ready, willing and able to do so." (*Id.* at ¶ 57). Plaintiff alleges that Defendants did not provide her an "opportunity to be heard, or any hearing at all." (*Id.* at ¶ 70).

## II. <u>Procedural Background</u>

Plaintiff commenced the instant action on May 24, 2019, in New York State Supreme Court, Steuben County. (Dkt. 1 at ¶ 1). Defendants removed this case to this Court on June 12, 2019, on the basis of federal question jurisdiction due to the assertion of claims pursuant to 42 U.S.C. § 1983. (*Id.* at ¶¶ 7-9).

On July 1, 2019, Defendants filed the pending motion to dismiss (Dkt. 7) seeking dismissal of the following claims: (1) Plaintiff's § 1983 claim for alleged due process violations; (2) Plaintiff's § 1983 claim of First Amendment retaliation to the extent it is asserted against the District and the Board; (3) Plaintiff's Article 78 claim; (4) Plaintiff's Education Law § 3028-d claim; and (5) the official capacity claims against Rumsey.

On July 22, 2019, Plaintiff filed her response opposing Defendants' motion, except Plaintiff agreed to dismissal of her claim under Education Law § 3028-d and the official capacity claims against Rumsey. (Dkt. 10 at 15, 21 n. 3). Defendants filed a reply in further support of their motion to dismiss on July 29, 2019. (Dkt. 12).

**DISCUSSION**

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010). To withstand dismissal, a complaint must set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotations and citations omitted). "To state a plausible claim, the complaint's '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" *Nielsen v. AECOM Tech. Corp.*, 762 F.3d 214, 218 (2d Cir. 2014) (quoting *Twombly*, 550 U.S. at 555).

**I.** **Plaintiff's § 1983 Due Process Claim**

"Section 1983 provides a cause of action against any person who deprives an individual of federally guaranteed rights 'under color' of state law." *Filarsky v. Delia*, 566

U.S. 377, 383 (2012). To state a § 1983 claim, a plaintiff must allege: (1) that the challenged conduct was "committed by a person acting under color of state law," and (2) that the conduct "deprived [the plaintiff] of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010) (citations omitted). "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Thomas v. Roach*, 165 F.3d 137, 142 (2d Cir. 1999).

### A. Legal Principles

Plaintiff alleges a procedural due process violation because her tenured employment was terminated without a hearing. (Dkt. 1-1 at 15). Defendants argue that dismissal is proper because Plaintiff was not entitled to a pre-termination hearing and the availability of an Article 78 proceeding as post-termination review satisfies the requirements of due process. (Dkt. 7-3 at 2-5).

The Due Process Clause was "'intended to secure the individual from the arbitrary exercise of the powers of government' . . . [and] serves to prevent governmental power from being 'used for purposes of oppression.'" *Daniels v. Williams*, 474 U.S. 327, 331 (1986) (citations omitted). To succeed on a due process claim, a plaintiff must establish that "he or she possesses a constitutionally protected interest in life, liberty, or property, and that state action has deprived him or her of that interest." *Valmonte*, 18 F.3d at 998.

It is well-established that a tenured public employment position is a property interest subject to due process protections. *See Strong v. Bd. of Educ. of Uniondale Union Free Sch. Dist.*, 902 F.2d 208, 211 (2d Cir. 1990) ("[Plaintiff's] position as a tenured teacher is

indisputably a property interest protected by the [F]ourteenth [A]mendment."); *Sever v. Bd. of Educ. of the Maine-Endwell Cent. Sch. Dist.*, No. 10-CV-774, 2012 WL 3886180, at *2 n.1 (N.D.N.Y. Sept. 6, 2012) ("Under New York Law, a tenured teacher or administrator has a protected property interest in her position and a right to retain it subject to being discharged for cause in accordance with the provisions of [the Education Law]." (internal quotation marks and citation omitted)).

"[O]nce it is determined that the Due Process Clause applies, 'the question remains what process is due.'" *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)). "A public employee who has a right not to be fired without 'just cause' . . . has 'a property interest in h[er] employment that qualifie[s] for the protections of procedural due process.'" *Otero v. Bridgeport Hous. Auth.*, 297 F.3d 142, 151 (2d Cir. 2002) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)). Such an employee generally has the right to "some kind of a hearing" prior to discharge. *Loudermill*, 470 U.S. at 542-43. The "pre-termination hearing 'need not be elaborate' so long as it provides '[t]he essential requirements of due process,' which are 'notice and an opportunity to respond.'" *Rivera-Powell v. N.Y.C. Bd. of Elections*, 470 F.3d 458, 467 (2d Cir. 2006) (quoting *Loudermill*, 470 U.S. at 545-46). Indeed, the Second Circuit has described the requisite pre-termination hearing as "a minimal one." *Locurto v. Safir*, 264 F.3d 154, 173 (2d Cir. 2001); *see also Gilbert v. Homar*, 520 U.S. 924, 929 (1997) ("[A] public employee dismissable only for cause [is] entitled to a very limited hearing prior to his termination, to be followed by a more comprehensive post-termination hearing."); *Loudermill*, 470 U.S. at 545 ("In general,

'something less' than a full evidentiary hearing is sufficient to a full administrative hearing and judicial review.").

For tenured public employees, "a pre-termination hearing does not purport to resolve the propriety of the discharge, but serves mainly as a check against a mistake being made by ensuring there are reasonable grounds to find the charges against an employee are true and would support his termination." *Locurto*, 264 F.3d at 173-74 (citing *Loudermill*, 470 U.S. at 545-46). Accordingly, "[a]n employee who has a property interest in his employment 'is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story,' before he is subjected to the loss of employment." *Munafo v. Metro. Transp. Auth.*, 285 F.3d 201, 212 (2d Cir. 2002) (quoting *Loudermill*, 470 U.S. at 546). To require more "would impede the government's interest in quickly removing from service an unsatisfactory employee." *Locurto*, 264 F.3d at 174.

Tenured public employees are not entitled to pre-termination hearings where their positions are eliminated as a result of the "governmental body implement[ing] a 'substantial reduction in its work force' for efficiency reasons." *Knox v. Town of Southeast*, 599 F. App'x 411, 412 (2d Cir. 2015). However, in *Dwyer v. Regan*, 777 F.2d 825 (2d Cir. 1985), *modified*, 793 F.2d 457 (2d Cir. 1986), the Second Circuit extended the principles pertaining to the discharge of a particular employee for cause to those situations where the employee's position is abolished under certain circumstances:

> Where . . . there is no indication that the state has undertaken substantial [efficiency] measures such as [abolishing or consolidating positions or by implementing a considered substantial reduction in its work force] . . . but

- 9 -

> rather is alleged to have targeted a single employee for termination, we hold that if the state has a due process obligation to provide a hearing prior to removing that employee from his ongoing position, and if the employee protests the notice of elimination of his position and contends that it is but a sham and pretext for the deprivation of his property right, the state must be prepared to grant the employee some kind of hearing prior to the termination of his employment.

*Id.* at 833. The Second Circuit made it clear that the employee under these circumstances must "clearly allege that he requested such a hearing." *Id.* (holding "only that when such a hearing is required it need be provided only if requested" and concluding "that if [the plaintiff] . . . cannot show that he made a timely request for a pretermination hearing, he is not entitled to recover for the failure to receive such a hearing").

As then-District Judge Droney stated in *Perkowski v. Stratford Bd. of Educ.*, 455 F. Supp. 2d 91 (D. Conn. 2006): "a pretermination hearing is required only when, first, the employee alleges that the reduction in force was pretextual and second, the employee demonstrates that she timely requested a pretermination hearing." *Id.* at 95. Thus, where a tenured position is abolished, the employee will be entitled to a pre-termination hearing only if he alleges that the abolishment of the position was pretextual and that he requested a pre-termination hearing.[2] *See Bailey v. Vill. of Pittsford*, 981 F. Supp. 2d 178, 183

---

[2] An exception to the *Dwyer* requirement, that a pre-termination hearing must be requested, may exist where the employee did not receive adequate notice of the abolishment of the position such that he or she did not have an opportunity to request such a hearing. *Cifarelli v. Vill. of Babylon*, 894 F. Supp. 614, 621 (E.D.N.Y. 1995) (holding that employee who was notified that position would be abolished just a few hours before decision was finalized cannot be expected to make a timely request for a hearing), *aff'd*, 93 F.3d 47 (2d Cir. 1996). However, Plaintiff has not alleged that she did not receive sufficient notice—in fact, her Complaint alleges that she was notified by Rumsey of the plan to abolish her position on January 25, 2019 (Dkt. 1-1 at ¶ 47), the Board approved the

(W.D.N.Y. 2013) ("[I]t is well settled that a public employee seeking to challenge his termination on the grounds that he was not afforded a pre-termination hearing *must actually request a hearing prior to termination.*" (emphasis in original)); *Fehlhaber v. Bd. Educ. of the Utica City Sch. Dist.*, No. 6:09-CV-1380, 2012 WL 2571302, at *8 (N.D.N.Y. July 3, 2012) ("Importantly, the employee bears the responsibility to request such a hearing."); *Pulaski v. Stratford Bd. of Educ.*, No. 3:04CV2015 (MRK), 2006 WL 2361724, at *4 (D. Conn. Aug. 15, 2006) ("While it is undoubtedly true that an employee need not use any 'magic words' in requesting a pretermination hearing, under *Dwyer* the employee surely cannot complain of the failure to provide a pretermination hearing unless the employee sought one in some way."); *Dworkin v. City of New York*, No. 95 Civ. 10261 (HB), 1996 WL 673815, at *3 (S.D.N.Y. Nov. 20, 1996) ("It is clear that the employee bears the responsibility to request such a pretermination hearing." (citation omitted)).

It has also been recognized by at least some district courts in the Second Circuit that where a tenured employee's position is abolished and contemporaneously a similar position is created, a pre-termination hearing is required on the issue of the similarity of the two positions. *See*, *e.g.*, *Bowen v. Baldwin Union Free Sch. Dist.*, CV 15-6829 (JMA) (GRB), 2017 WL 4083553, at *11 (E.D.N.Y. Aug. 23, 2017), *adopting report and recommendation*, 2017 WL 4083573 (E.D.N.Y. Sept. 14, 2017); *Broomer v. Huntington Union Free Sch. Dist.*, Nos. 12 CV 574 (DRH)(ART), 12 CV 575 (DRH)(AKT), 2013 WL 4094924, at *5 (Aug. 13, 2013); *Goldberg v. Bd. of Educ. of the Hempstead Sch. Dist.*, 777

---

abolishment of the position on January 30, 2019 (*id.* at ¶ 52), and the effective date of the abolishment was June 30, 2019 (*id.* at ¶¶ 50, 52).

F. Supp. 1109, 1113 (E.D.N.Y. 1991); *cf. Banigo v. Bd. of Educ. of Roosevelt Union Free Sch. Dist.*, No. 06-4792, 2009 WL 577974, at *10 (E.D.N.Y. Mar. 4, 2009) (where no new position is created, but instead job duties are transferred to an existing position, no pre-termination hearing is required). These decisions appear grounded in the decision of *DeSimone v. Bd. of Educ. South Huntington Union Free Sch. Dist.*, 612 F. Supp. 1568 (E.D.N.Y. 1985), where the board of education abolished the plaintiff's position of high school dean, and at the same time established a new position of high school administrative assistant, and the district court held that due process required a pre-termination hearing on the issue of the similarity of the two positions. *Id.* at 1570-71. *DeSimone* was decided prior to *Dwyer*, and the Second Circuit has expressly declined to reach the issue of whether a pre-termination hearing is required when a tenured teacher's position is abolished and a similar post is concurrently created. *Caruso-Famiglietti v. Huntington Union Free Sch. Dist.*, 566 F. App'x 92, 92-93 (2d Cir. 2014).

B. **Analysis**

It is against this landscape that Plaintiff's due process claim is considered. As an initial matter, the Court rejects Defendants' argument that Plaintiff's allegation that she was "tenured" is insufficient to allege Plaintiff had a property interest in her continued employment. (Dkt. 7-3 at 2). Indeed, Plaintiff's allegations are fully supported by the School Board's May 15, 2013, minutes, confirming the granting of tenure to Plaintiff. (*See* Dkt. 11-1 at 1 ("Upon recommendation of the Superintendent of Schools . . . [the Board grants] tenure to [Plaintiff] in the area of School District Business Leader effective July 14,

2013.")). Thus, Plaintiff has sufficiently alleged a constitutionally protected property interest in her employment.

However, Plaintiff has failed to plausibly allege a due process claim based on the failure to provide a pre-termination hearing, because she has neither alleged that she requested a pre-termination hearing (as required by *Dwyer*) nor has she alleged that the Board contemporaneously created a new position in which it transferred Plaintiff's job duties (as required by *DeSimone*).

Nowhere in Plaintiff's Complaint does she allege that she requested a pre-termination hearing. In other words, the Complaint plainly alleges that Plaintiff's position was abolished for allegedly pretextual reasons (Dkt. 1-1 at ¶¶ 46-52), but *Dwyer* requires that Plaintiff request a pre-termination hearing, and she makes no such allegations in her Complaint. (*See* Dkt. 1-1). In an attempt to avoid this deficiency, Plaintiff argues in opposition to Defendants' motion that her service of a notice of claim satisfied this requirement. (Dkt. 10 at 14). Not only is this allegation not contained in Plaintiff's Complaint, but a review of the notice of claim does not support Plaintiff's position. The notice of claim alleges that the termination of Plaintiff's position was pretextual (Dkt. 7-2 at ¶ 4), but no reasonable view of the allegations in the notice of claim could support a conclusion that Plaintiff was requesting a pre-termination hearing. First, the timing does not support such a conclusion—Plaintiff was notified that her position was being eliminated on January 25, 2019, (Dkt. 1-1 at ¶¶ 47, 52), and yet Plaintiff did not file the notice of claim until on or about April 12, 2019 (Dkt. 7-2 at 1-4). While Plaintiff's administrative leave had not yet expired (which corresponded to the effective date of the

abolishment of Plaintiff's position), it is clear that in late January, Plaintiff had been required to "vacate her office, surrender all District property and leave the District premises." (Dkt. 1-1 at ¶ 51). Thus, it is not plausible to allege that a notice of claim served over two months later somehow constituted a request for a pre-termination hearing. Second, there is no reference in the notice of claim to a hearing or a request for a hearing. (*Id.*). Plaintiff's contention that her conclusory reference to "denial of Due Process" (Dkt. 10 at 14) somehow represented a demand for a pre-termination hearing—particularly when viewed with the timing of the notice of claim—is simply not plausible. While the request for a pre-termination hearing does not require "magic words," *Pulaski*, 2006 WL 2361724, at *4, and it is certainly feasible that a notice of claim could contain a request for a pre-termination hearing, *cf. Fehlhaber*, 2012 WL 2571302, at *8 (although there were communications about the termination from both the plaintiff and his attorney, they did not explicitly request a pre-termination hearing, and the notices of claim were filed before and after the alleged wrongful abolishment), Plaintiff has failed to plausibly allege that she made any such request.

Furthermore, even if the line of cases originating with *DeSimone* supported the notion that a school district must automatically provide a pre-termination hearing when it abolishes a position and contemporaneously creates a new position with similar job duties, Plaintiff has not alleged that a new position was created with similar job duties. In her memorandum of law submitted in opposition to Defendants' motion, Plaintiff argues that she has alleged "a concurrent creation of at least one new position at BOCES and the failure to offer her the opportunity . . . to fill those positions" and that she "plainly alleges that the

District contracted with BOCES for a new position to fulfill the bulk of Plaintiff's responsibilities." (Dkt. 10 at 12). As Defendants point out, Plaintiff is not alleging that the District created a new position—but rather a third party purportedly created the position (BOCES). (Dkt. 12-2 at 6). Moreover, notwithstanding Plaintiff's attempt to recast the allegations of her Complaint in her memorandum of law, a careful review of Plaintiff's Complaint reveals that Plaintiff has not alleged that a new position was created at the time her position was abolished. Instead, the Complaint alleges that her job duties are now divided between an official with BOCES and "another person," but there is no allegation that a new position was created with substantially the same job responsibilities. (Dkt. 1-1 at ¶ 55). Thus, even if the law in this Circuit required a pre-termination hearing whenever a tenured individual's position is abolished and a similar post is concurrently created, Plaintiff has not plausibly alleged such an occurrence in this case.

Finally, it is well-established that an Article 78 proceeding affords a tenured employee adequate due process post-termination. *See*, *e.g.*, *Locurto v. Safir*, 264 F.3d 154, 175 (2d Cir. 2001) ("An Article 78 proceeding therefore constitutes a wholly adequate post-deprivation hearing for due process purposes."); *Tessler v. Paterson*, 451 F. App'x 30, 33 (2d Cir. 2011) (where employee failed to request a pre-termination hearing, a post-deprivation Article 78 proceeding provided sufficient due process protections under the circumstances). Accordingly, Plaintiff's § 1983 claim based upon due process violations fails to state a claim, and Defendant's motion to dismiss is granted.

## II. Plaintiff's § 1983 First Amendment Retaliation Claim

Plaintiff's First Amendment retaliation claim arises out of Defendants' termination of Plaintiff in retaliation for her complaints about operations of the District, including the unlawful hiring of uncertified teachers and conflicts of interest. (Dkt. 1-1 at ¶¶ 75-76). The claim is alleged against all Defendants, but the motion to dismiss is directed only to the *Monell* liability aspect of this claim as asserted against the District and the Board. Defendants contend that Plaintiff has failed to allege participation by the Board or District in any alleged retaliation and Plaintiff's "cat's paw" theory of liability is not sustainable. (Dkt. 7-3 at 8).

A municipality or other local government may be liable under § 1983 only "if the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation." *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (citing *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 692 (1978)). "In other words, municipalities are responsible only for their own illegal acts, and cannot be held vicariously liable under § 1983 for their employees' actions." *Cash v. Cty. of Erie*, 654 F.3d 324, 333 (2d Cir. 2011) (internal quotation marks omitted).

"[T]o establish municipal liability under § 1983, a plaintiff must prove that 'action pursuant to official municipal policy' caused the alleged constitutional injury." *Id.* (quoting *Connick*, 563 U.S. at 60). Official municipal policy includes "the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick*, 563 U.S. at 61. Thus, to successfully state a claim for *Monell* liability, a plaintiff must "make factual allegations

that support a plausible inference that the constitutional violation took place pursuant either to a formal course of action officially promulgated by the municipality's governing authority or the act of a person with policy making authority for the municipality." *Missel v. Cty. of Monroe*, 351 F. App'x 543, 545 (2d Cir. 2009) (quoting *Vives v. City of New York*, 524 F.3d 346, 350 (2d Cir. 2008)).

The Court disagrees with Defendants' contention that the District and the Board are not sufficiently personally implicated in the alleged retaliation so as to sustain a claim. Plaintiff alleges that she raised her concerns about unlawful and improper practices with Rumsey and "at least one member of the Board" (Dkt. 1-1 at ¶ 25), that she participated in a meeting with Rumsey and the then-Board President in June 2017 concerning the hiring of an uncertified teacher (*id.* at ¶¶ 28-29), and that the Board unanimously agreed with Rumsey's recommendation to eliminate Plaintiff's position even though it "prepared no analysis, formal or informal, calculating the putative cost savings, considering the impact of the elimination of the position on the District's administrative efficiency, alternative areas of savings, or any other issues that the elimination of the position implicated," (*id.* at ¶¶ 52-53). At this stage of the proceedings, Plaintiff's allegations are sufficient to plausibly allege the Board's and District's direct involvement in the alleged retaliatory conduct, and accordingly Defendants' motion to dismiss is denied. Because the Court is denying the motion to dismiss the retaliation claim, it does not reach Plaintiff's alternative argument that Rumsey was a policymaker for purposes of *Monell* liability. *See Hurdle v. Bd. of Educ. of City of New York*, 113 F. App'x 423, 425 (2d Cir. 2004) (school district's liability under *Monell* may be premised on theory that district employee was acting as final policymaker,

and whether employee was such a policymaker must be decided pursuant to state law before the case is submitted to the jury).

## III. Plaintiff's Article 78 Claim

Defendants seek dismissal of Plaintiff's Article 78 claim on the basis that it is precluded by her claim under New York Civil Service Law § 75-b. (Dkt. 7-3 at 5-6). Defendants also argue that the Article 78 claim, even if allowed to proceed with the § 75-b claim, cannot be pursued against Rumsey. (*Id.* at 10). For the reasons discussed below, the Court denies without prejudice Defendants' motion to dismiss the Article 78 claim, and instead directs the parties to file submissions explaining why the Article 78 claim should not be dismissed without prejudice and remanded to state court, with a stay imposed on Plaintiff's remaining claims pending a resolution of the Article 78 proceeding in state court.

Neither Defendants nor Plaintiff cite caselaw directly addressing whether an Article 78 proceeding may be maintained along with a claim under New York Civil Service Law § 75-b. (Dkt. 7-3 at 5-6; Dkt. 10 at 15-17). Indeed, caselaw not cited by either party suggests that the two types of claims are not mutually exclusive. *See Garrity v. Univ. of Albany*, 301 A.D.2d 1015, 1017 (3d Dept. 2003) (while § 75-b claim was properly dismissed, Article 78 claim reinstated and case remanded for a hearing); *Chamberlin v. Jacobson*, 260 A.D.2d 317, 317 (1st Dept. 1999) (Article 78 proceeding based upon alleged violation of § 75-b); *cf. Dibiase v. Barber*, No. CV 06-5355(AKT), 2008 WL 4455601, at *8-9 (E.D.N.Y. Sept. 30, 2008) (discussing but not deciding argument that employee first had to pursue Article 78 proceeding based upon wrongful termination before pursuing § 75-b claim).

The Court declines to resolve this issue, as well as whether the claim can be pursued against Rumsey, because it is generally inappropriate for a federal district court to exercise supplemental jurisdiction over an Article 78 claim. *See, e.g., Bartolini v. Cassels,* No. 17-CV-5671 (NSR)(PED), 2018 WL 3023161, at *6 (S.D.N.Y. June 18, 2018) ("District Courts in this Circuit have consistently declined to exercise supplemental jurisdiction over Article 78 claims.") (collecting cases); *Nitti v. Cty. of Tioga*, No. 3:14-CV-0954 GTS/DEP, 2015 WL 5708637, at *9 (N.D.N.Y. Sept. 28, 2015) ("Courts have found that compelling reasons to decline to exercise supplemental jurisdiction exist in the very nature of an Article 78 proceeding[.]" (quotations omitted)); *East End Eruv Ass'n, Inc. v. Town of Southampton*, No. CV 13-4810(AKT), 2014 WL 4826226, at *18 (E.D.N.Y. Sept. 14, 2014) ("The Court agrees with the essentially unanimous position of the New York federal district courts that the very nature of an Article 78 proceeding presents such compelling reasons to decline exercising supplemental jurisdiction over a plaintiff's Article 78 claim." (internal quotation marks and citations omitted)); *Beckwith v. Erie Cty. Water Auth.*, 413 F. Supp. 2d 214, 226-27 (W.D.N.Y. 2006) ("[T]his court has no original or supplemental subject matter jurisdiction over [an] Article 78 proceeding as neither federal nor New York state law empower the federal courts to consider such claims, and, under New York law, authority to grant relief pursuant to an Article 78 proceeding is exclusively vested in New York Supreme Court.").

Accordingly, the Court directs the parties to each file written memoranda within thirty (30) days of the entry of this Decision and Order, explaining why the Article 78 claim should not be dismissed without prejudice and remanded to state court, with Plaintiff's

- 19 -

remaining claims stayed pending a resolution of the Article 78 proceeding. *See East End Eruv Ass'n, Inc.*, 2014 WL 4826226, at *21 (dismissing Article 78 claim without prejudice and staying remaining claims until Article 78 proceeding resolved by state court).

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss (Dkt. 7) is granted in part and denied in part. In particular, the motion is granted with respect to Plaintiff's § 1983 claim for alleged due process violations, Plaintiff's claim pursuant to New York Education Law § 3028-d, and the official capacity claims against Rumsey. Defendants' motion is denied as to Plaintiff's § 1983 First Amendment retaliation claim, and it is denied without prejudice as to Plaintiff's Article 78 claim, with the parties directed to submit memoranda within thirty (30) days explaining their respective positions on whether the Article 78 claim should be dismissed without prejudice and remanded to state court, with the remaining claims in this proceeding stayed pending a resolution of the Article 78 proceeding.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
United States District Judge

Dated: March 24, 2020
Rochester, New York