UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

MARGARET A. BURDICK,

              Plaintiff,          **DECISION AND ORDER**

         v.                      6:19-CV-06426 EAW

BATH CENTRAL SCHOOL DISTRICT,
BATH CENTRAL SCHOOL DISTRICT
BOARD OF EDUCATION, and JOSEPH
RUMSEY, *in his official and individual
capacity*,

              Defendants.
_____

## INTRODUCTION

Plaintiff Margaret A. Burdick ("Plaintiff") filed this action, alleging claims pursuant to 42 U.S.C. § 1983 and New York state law against defendants Bath Central School District (the "District"), Bath Central School District Board of Education (the "Board"), and Superintendent Joseph Rumsey ("Rumsey") (collectively, "Defendants") based upon the termination of her employment as a tenured business administrator. (Dkt. 1-1; Dkt. 57). Defendants now move for summary judgment dismissing Plaintiff's First Amendment and New York Civil Service Law § 75-b ("Section 75-b") retaliation claims. (Dkt. 83). For the following reasons Defendants' motion is granted as to the First Amendment claim which is dismissed with prejudice, and the Court declines to exercise supplemental jurisdiction over the Section 75-b state-law cause of action. Instead, the case is remanded to state court.

- 1 -

**BACKGROUND**

I. **Factual Background**

The following facts are taken from Defendants' statement of undisputed material facts (Dkt. 83-1), Plaintiff's response and counterstatement (Dkt. 88-1), and the exhibits and affidavits attached to the parties' motion papers. Unless otherwise noted, the following facts are undisputed.

The District is a small central school district located in Steuben County governed by a seven-member board of education. (Dkt. 83-1 at ¶ 1; Dkt. 88-1[1] at 1 ¶ 1). Plaintiff was hired by the District as a business administrator in 2010 and served in that capacity until she was put on paid administrative leave on January 28, 2019, and her position was eliminated on June 30, 2019. (Dkt. 83-1 at ¶¶ 2, 36; Dkt. 83-32; Dkt. 88-1 at 1 ¶ 2, 4 ¶ 36). Rumsey was hired as the District's superintendent in 2013. (Dkt. 83-1 at ¶ 3; Dkt. 83-21 at 8; Dkt. 88-1 at 1 ¶ 3). Shortly after Rumsey was hired, the Board granted Plaintiff tenure upon Rumsey's recommendation. (Dkt. 83-1 at ¶ 4; Dkt. 83-42; Dkt. 88-1 at 1 ¶ 4).

During her time with the District, Plaintiff made frequent reports to Rumsey and other District officials when she thought District employees and staff violated the District's policies or New York law. In January 2013, Plaintiff reported to Rumsey that a recently hired teaching assistant did not have a valid teaching certificate. (Dkt. 83-1 at ¶ 6; Dkt. 88-1 at 2 ¶ 6; Dkt. 83-39 at 59-60). Plaintiff continued to make similar reports throughout her tenure when she learned that a District employee did not have the proper certification.

---

[1] Because there are two sets of paragraph numbers in Plaintiff's filing, the Court references pages numbers when citing to Docket 88-1 in addition to the paragraph numbers.

(*See* Dkt. 83-39 at 10-11, 19-21, 23-24, 33-34, 43-45, 50-51, 59-60, 65; Dkt. 88-1 at 6 ¶ 6; Dkt. 88-7 at 30-31). Plaintiff also reported several conflicts of interest among District staff and Board members, in which she reported to Rumsey that District resources or funds were used to benefit personal businesses. (Dkt. 83-39 at 79-82, 83-114; Dkt. 88-1 at 7 ¶¶ 8-9). In addition, Plaintiff expressed concerns to Rumsey that certain gambling activities, including a Superbowl betting pool among staff and a raffle for teachers, should not be permitted on campus. (Dkt. 83-39 at 115-18; Dkt. 88-7 at 76-79).

Around May 2018, the District contracted with Mary Beth Lovejoy to train a newly-hired District treasurer. (Dkt. 83-1 at ¶ 9; Dkt. 83-24 at 7, 10; Dkt. 88-1 at 2 ¶ 9). Ms. Lovejoy was retired at the time but had previously worked as a treasurer, business administrator, and assistant superintendent at other school districts. (Dkt. 83-1 at ¶ 10; Dkt. 88-1 at 2 ¶ 10; Dkt. 83-24 at 3-6). In November 2018, Ms. Lovejoy told Rumsey that she had concerns about Plaintiff's work performance, and she drafted a report that, in part, detailed areas in which she thought Plaintiff was not doing an adequate job. (Dkt. 83-1 at ¶¶ 14, 18, 20; Dkt. 83-21 at 17-19; Dkt. 88-1 at 3 ¶¶ 14, 18, 20; *see* Dkt. 83-28). For example, the report stated that Plaintiff did not provide complete information to the business office staff, was generally absent or uninvolved in important decisions, lacked accounting skills, failed to timely file cost reports for state grants, and did not monitor accounts related to a $35 million capital project. (Dkt. 83-28). Ms. Lovejoy attended a meeting of the Board at the end of December to raise the issues identified in her written report. (Dkt. 83-1 at ¶ 22; Dkt. 88-1 at 3 ¶ 22; Dkt. 83-24 at 51-55). The Board discussed

developing a performance improvement plan for Plaintiff at that meeting. (Dkt. 83-1 at ¶ 24; Dkt. 88-9 at 37; Dkt. 83-21 at 39-40).

After that Board meeting, Rumsey inquired with the local Board of Cooperative Educational Services ("BOCES") about whether the District could contract with that organization for business administrator services. (Dkt. 83-1 at ¶ 26; Dkt. 88-1 at 3 ¶ 26; Dkt. 83-21 at 46-48). Rumsey learned that the District could save $40,000-$50,000 annually by eliminating Plaintiff's position and instead partnering with BOCES. (Dkt. 83-1 at ¶ 27; Dkt. 88-1 at 4 ¶ 27; Dkt. 83-4 at ¶ 3). At a Board meeting held on January 19, 2019, Rumsey told the Board about the BOCES business administrator services and potential cost-savings. (Dkt. 83-1 at ¶ 28; Dkt. 88-1 at 4 ¶ 28; Dkt. 83-21 at 55-56). The Board was receptive to this plan and discussed placing Plaintiff on administrative leave and eliminating the business administrator position at the end of the school year. (Dkt. 83-1 at ¶ 32; Dkt. 88-1 at 4 ¶ 32; Dkt. 83-21 at 59-60).

On January 25, 2019, Rumsey met with Plaintiff and gave her two letters—one stating that she was placed on paid administrative leave, and the other notifying her that the District planned to eliminate the business administrator position at the end of the school year because of the District's "severe financial distress." (Dkt. 83-1 at ¶ 35; Dkt. 88-1 at 4 ¶ 35; *see* Dkt. 83-26; Dkt. 83-27). During a special meeting held on January 30, 2019, the Board voted to place Plaintiff on administrative leave immediately and to eliminate her position on June 30, 2019. (Dkt. 83-1 at ¶ 36; Dkt. 88-1 at 4 ¶ 36; Dkt. 83-32). The Board minutes reflect that Plaintiff's position was abolished due to "economic reasons." (*See* Dkt. 83-32).

The parties dispute the District's financial standing during the 2018-2019 school year, which is when the Board decided to put Plaintiff on leave and eliminate her position. Defendants contend that the District was in severe financial distress because of a tax assessment error committed by the Town of Bath that resulted in an approximate $500,000 loss in revenue. (Dkt. 83-1 at ¶¶ 11-12; Dkt. 83-21 at 114-15; Dkt. 83-28 at 3; Dkt. 83-23 at 18-19). Because of this error, Defendants state that the District needed to implement cost-saving measures for the following year. (Dkt. 83-1 at ¶ 13; Dkt. 83-5 at ¶ 2). Plaintiff does not dispute the tax assessment error, but contends that it was quickly rectified by the Town of Bath and therefore not incorporated into the 2019-2020 budget. (Dkt. 88-1 at 2 ¶ 11). Indeed, Ms. Lovejoy testified that the tax assessment error did not affect revenue for the 2019-2020 year, and she believed the budget for that year was only "slightly less" than the prior year. (Dkt. 83-24 at 37-39). That said, the parties do agree that as a result of the switch to the BOCES shared service, the District incurred additional net costs in 2018-2019, but saved over $72,000 in 2019-2020, and over $106,000 in 2020-2021. (Dkt. 83-1 at ¶ 45; Dkt. 88-1 at 4 ¶ 45).

## II.   Procedural Background

Plaintiff commenced this action on May 24, 2019, in New York State Supreme Court, Steuben County (Dkt. 1 at ¶ 1), and Defendants removed the case to this Court, on the basis of federal question jurisdiction (*id.* at ¶¶ 7-9). Plaintiff's complaint included: a First Amendment retaliation claim; a Fifth and Fourteenth Amendment due process claim; a state-law claim brought pursuant to Article 78 of the New York Civil Practice Law and Rules; and state law retaliation claims brought under New York Education Law § 3028-d

and Civil Service Law § 75-b. (Dkt. 1-1 at 14-17). Plaintiff sought reinstatement of her position through the Article 78 claim, or money damages if reinstatement was not practicable. (*Id.* at 15).

Upon Defendants' motion (Dkt. 7), the Court dismissed Plaintiff's due process claim, the New York Education Law § 3028-d claim, and the official capacity claims against Rumsey, but permitted Plaintiff's First Amendment claim to proceed (Dkt. 14 at 20). After further briefing, the Court remanded the Article 78 claim and stayed this action until the state court proceeding was resolved. (Dkt. 20).

On July 26, 2021, Defendants notified the Court that the state court granted summary judgment in their favor, dismissing the Article 78 petition. (Dkt. 25). The state court concluded that cost-saving measures due to the $500,000 cash shortfall was a bona fide reason for Defendants to eliminate Plaintiff's position. (Dkt. 25-2 at 5). Plaintiff appealed that decision and this Court continued to stay the federal action, pending the resolution of the appeal. (*See* Dkt. 28 at 1; Dkt. 31). The Appellate Division, Fourth Department affirmed the dismissal of the Article 78 petition. (Dkt. 33-1). Ultimately the New York State Court of Appeals denied Plaintiff's motion for leave to appeal on March 17, 2023. (Dkt. 48).

After the Court lifted the stay on this action, Defendants filed a motion to dismiss Plaintiff's remaining claims arguing, in part, that they were barred by the doctrine of collateral estoppel. (Dkt. 42-5). The Court held oral argument on August 2, 2023, and denied Defendants' motion. (Dkt. 54; Dkt. 55). Plaintiff filed an amended complaint on August 17, 2023, which narrowed her causes of action to the surviving First Amendment

and Section 75-b retaliation claims. (Dkt. 57). Defendants answered the amended complaint (Dkt. 61) and discovery closed on August 2, 2024 (Dkt. 79). Defendants filed an amended answer to the amended complaint on May 30, 2024. (Dkt. 80). On September 20, 2024, Defendants moved for summary judgment, seeking dismissal of Plaintiff's First Amendment and Section 75-b retaliation claims. (Dkt. 83). Plaintiff responded on November 14, 2024 (Dkt. 88),[2] and Defendants replied on November 29, 2024 (Dkt. 91).

## DISCUSSION

### I. Summary Judgment Standard

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment should be granted if the moving party establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court should grant summary judgment if, after considering the evidence in the light most favorable to the nonmoving party, it finds that no rational jury could find for that party. *Scott v. Harris*, 550 U.S. 372, 380 (2007) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). Once the moving party has met its burden, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . [T]he nonmoving party must come forward

---

[2] Defendants request that the Court strike Plaintiff's opposition memorandum because it is over the 25-page limit and Plaintiff did not seek permission to file a response brief in excess of that page limit, as required by this Court's local rules. (Dkt. 91 at 3-4; *see* Loc. R. Civ. P. 7(a)(2)(C)). Although the Court does not condone Plaintiff's lack of compliance with the local rules, it exercises its discretion and will consider the entire response brief. *See Wight v. BankAmerica Corp.*, 219 F.3d 79, 85 (2d Cir. 2000) (holding that a district court has discretion to excuse non-compliance with local rules in the interest of justice).

with specific facts showing that there is a genuine issue for trial." *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (quoting *Matsushita Elec.*, 475 U.S. at 586-87). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

II. **First Amendment Retaliation**

The Court first turns to the federal claim—Plaintiff's First Amendment retaliation claim. "[T]he First Amendment protects speech uttered by an employee in his or her capacity as a citizen regarding a matter of public concern." *Smith v. County of Suffolk*, 776 F.3d 114, 118 (2d Cir. 2015).

> In order to survive a motion for summary judgment on a First Amendment retaliation claim, a plaintiff must bring forth evidence showing that [she] has engaged in protected First Amendment activity, [she] suffered an adverse employment action, and there was a causal connection between the protected activity and the adverse employment action.

*Dillon v. Morano*, 497 F.3d 247, 251 (2d Cir. 2007). But "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006). Thus, if Plaintiff "did not speak as a citizen . . . '[she] has no First Amendment cause of action based on [her] . . . employer's reaction to the speech.'" *Weintraub v. Bd. of Educ. of City Sch. Dist. Of City of N.Y.*, 593 F.3d 196, 201 (2d Cir. 2010) (quoting *Sousa v. Roque*, 578 F.3d 164, 170 (2d Cir. 2009)). In other words, a public employee such as Plaintiff speaking as part of her job duties is not speaking as a citizen. Thus, the framework relied on by

- 8 -

Plaintiff (Dkt. 88 at 10-11) and set forth by the Supreme Court in *Pickering v. Bd. of Ed. of Twp. High Sch. Dist. 205, Will Cnty., Illinois*, 391 U.S. 563 (1968)—asking "(1) whether the employee was speaking on a matter of 'public concern'; and if so, (2) whether the employer's reaction to that speech was nonetheless justified, balancing the employee's interest 'in commenting upon matters of public concern' against the public employer's interest in 'promoting the efficiency of the public services it performs through its employees'"—does not even come into play. *Heim v. Daniel*, 81 F.4th 212, 224 (2d Cir. 2023) (quoting *Pickering*, 391 U.S. at 568, other citations omitted).

Here, the undisputed facts establish that Plaintiff was not speaking as a citizen, but rather pursuant to her official duties. Plaintiff's alleges that she was impermissibly terminated because she reported "improper and unlawful conduct within the District." (Dkt. 88 at 11; *see* Dkt. 57 at ¶¶ 24-43, 64). These reports included complaints that the District hired and employed uncertified teachers, that District officers and employees had financial conflicts of interest, and that District employees and officers were involved in gambling activities on school grounds. (Dkt. 88 at 11-12). But Plaintiff's own testimony established that making these reports was part of her job responsibilities.

Plaintiff repeatedly testified at deposition that it was within the scope of her official duties to lodge the reports that underlie this litigation. (Dkt. 83-39 at 79-83, 88-89, 93-96, 112). For example, Plaintiff stressed that she believed it was her official responsibility as business administrator to report conflicts of interest:

> Q   How does reporting conflicts of interest involving school employees or officers relate to your job duties as a school business administrator?

- 9 -

> A It was my understanding as a school business administrator I was to adhere to the laws of the state and the federal government and honor the actions as a school business administrator. If I was aware of something, it was my understanding I was to report it. . . . .
>
> Q Is it your position that it was part of your role as school business administrator to make such reports?
>
> A I believe so.

(Dkt. 83-39 at 79-80). Plaintiff continued to testify that it was part of her official job duties to report each specific conflict of interest that she identified. (*See id.* at 80-82). Plaintiff provided a similar response regarding her reports of uncertified teachers:

> Q We've also talked about various reports you made regarding the eight individuals listed in your interrogatory response with regard to their lack of certification or lack of proper certification for the positions they held in the district. How if at all does that relate to your responsibilities as school business administrator?
>
> A The state could withhold aid for those dollars we spent if it's a gift of taxpayer dollars. We did not have the legal authority to spend them. So if we were caught and the aid was withheld or we were financially penalized, that would have had an impact on our budget so that would have been within my job description or job duties.
>
> Q And I was going to follow up with that question which I think you've just answered, but are you claiming that it was part of your job responsibilities to report the employment of uncertified or not properly certified teachers, teaching assistants and coaches?
>
> A Yes.

(*Id.* at 82-83). Although Plaintiff was not asked directly about whether reporting the gambling issues related to raffles and the Super Bowl pool were part of her job description, she did testify that the conduct violated the New York General Municipal Law (*id.* at 115-

18) and she further testified that reporting violations of the law (including the General Municipal Law) was part of her job duties (*id*. 79-90).

In addition to Plaintiff's own testimony on the issue, Rumsey confirmed that reporting these issues, including the gambling issues, was within the scope of Plaintiff's job duties. (Dkt. 83-5 at ¶ 10; Dkt. 83-40 at 117-19):

> Q   You were present for the deposition of Ms. Burdick recently, correct?
>
> A   Yes.
>
> . . .
>
> Q   And during [Plaintiff's] deposition she testified that each and every one of those reports was related to her job responsibilities and within the scope of her duties, correct?
>
> A   Yes, she did.
>
> Q   Did you agree with her testimony in that regard?
>
> A   Yes.

(Dkt. 83-40 at 118-119).

In opposition to this evidence, Plaintiff did not submit her own affidavit. (*See generally* Dkt. 88). Instead, she relies on the job description for the School Business Administrator position and the fact that it did not expressly list reporting these issues as part of the responsibilities for that position. (Dkt. 88 at 11; *see* Dkt. 88-8). But "the listing of a given task in an employee's written job description is neither necessary nor sufficient to demonstrate that conducting the task is within the scope of the employee's professional duties for First Amendment purposes." *Garcetti*, 547 U.S. at 425; *see Severin v. N.Y.C. Dep't of Educ.*, No. 23-732-CV, 2024 WL 1904574, at *2 (2d Cir. May 1, 2024)

(concluding the plaintiff failed to raise a material issue of fact where he argued his "job duties did not explicitly obligate him to report" misconduct). Furthermore, Plaintiff acknowledged at her deposition that the job description did not list all her responsibilities (Dkt. 83-39 at 77), and the document itself provides that the business administrator's duties are "not limited to" the listed responsibilities (*see* Dkt. 88-8 at 2). In other words, Plaintiff cannot now attempt to manufacture a material dispute of fact by pointing to the absence of specific written responsibilities when she testified under oath that reporting such issues was a part of her position.

Therefore, Plaintiff's First Amendment retaliation claim fails because the undisputed facts establish that the alleged protected speech was made pursuant to her job responsibilities. Based on the record, no reasonable jury could conclude otherwise. Because of this conclusion, the Court need not and does not reach the other issues raised by Defendants in support of summary judgment, including whether the state court determinations operate to bar Plaintiff's claims under the principles of collateral estoppel, whether Plaintiff could establish the causal element of a prima facie case, and even if she could, whether *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274 (1977), provides a defense.

### III. <u>Section 75-b Whistleblower Claim</u>

Without the First Amendment claim, Plaintiff's only surviving cause of action is her state-law Section 75-b claim. Thus, the Court considers whether it should exercise supplemental jurisdiction over the remaining state-law claim.

A district court has "supplemental jurisdiction over state-law claims that 'form part of the same case or controversy' as other claims over which the court has original jurisdiction.'" *Kroshnyi v. U.S. Pack Courier Servs., Inc.*, 771 F.3d 93, 102 (2d Cir. 2014) (quoting 28 U.S.C. § 1367(a)).  "A court 'may decline to exercise supplemental jurisdiction,' however, if, among other factors, 'the claim raises a novel or complex issue of State law,' or 'the district court has dismissed all claims over which it has original jurisdiction.'" *Id.* (quoting 28 U.S.C. § 1367(c)). "In general, where the federal claims are dismissed before trial, the state claims should be dismissed as well." *Delaney v. Bank of Am. Corp.*, 766 F.3d 163, 170 (2d Cir. 2014) (quoting *Marcus v. AT&T Corp.*, 138 F.3d 46, 57 (2d Cir. 1998)).

The Court recognizes that this matter has been passed between state and federal court.  That said, it declines to exercise supplemental jurisdiction over Plaintiff's surviving Section 75-b claim.  Resolution of that claim will, in part, depend on whether Plaintiff can establish that "but for" her complaints, the termination of her position would not have occurred. *Jones v. Town of Whitehall*, No. 1:13-CV-0806 LEK/CFH, 2015 WL 4603511, at *9 (N.D.N.Y. July 30, 2015) ("In order to satisfy the causation element for a § 75-b claim, a public employee must establish that 'but for' the protected activity, the adverse personnel action by the public employer would not have occurred." (citing N.Y. Civ. Serv. Law § 75-b(3)(a)).  Because Plaintiff was unable to establish that she engaged in Constitutionally-protected speech necessary for her First Amendment claim, the Court has not considered the causation arguments that are also pertinent to her state-law claim. (*See* Dkt. 83-2 at 20-22; Dkt. 88 at 20-30, 32-34).  Resolution of those causation issues will, in

part, depend on the applicability of collateral estoppel based on the state court determinations. The Court concludes that it is best left to the state court to resolve this statutory state-law claim, including the applicability of the state court determinations to any collateral estoppel analysis, particularly since the case was commenced originally in state court. *See Sunnen v. New York State Dep't of Health*, 544 F. App'x 15, 17 (2d Cir. 2013) ("In situations where the removed federal claims have been dismissed, we have noted that 'concerns of comity and of federalism . . . encourage remanding to the state courts cases in which state court adjudication can properly claim primacy of interest.'").

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment (Dkt. 83) is granted as to the First Amendment retaliation claim. The Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state-law claim, and remands the matter to New York State Supreme Court, Steuben County, for consideration of the remaining claim. The Clerk of Court is instructed to mail a certified copy of this Decision and Order, with a clear reference to Supreme Court, Steuben County, Index No. 2019-0699CV, to the clerk of the state court, and close the case.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated: September 25, 2025
Rochester, New York